## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                         :     Chapter 11
                                               :
TRIANGLE USA PETROLEUM                         :     Case No. 16-11566 (___)
CORPORATION, *et al.*,                          :
                                               :     (Joint Administration Pending)
                    Debtors.[1]                 :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS UNDER BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 2002, 4001, AND 9014, AND LOCAL BANKRUPTCY RULE 4001-2 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; (IV) GRANTING RELATED RELIEF; AND (V) SCHEDULING A FINAL HEARING

Triangle USA Petroleum Corporation ("**TUSA**") and certain of its affiliates, the

debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**" and,

together with Triangle Petroleum Corporation and its non-debtor controlled affiliates and

subsidiaries, "**Triangle**" or the "**Company**"), hereby move (this "**Motion**") this Court for entry

of an interim order (the "**Interim Order**") and a final order (the "**Final Order**") under sections

105(a), 361, 362, 363, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy

Court for the District of Delaware (the "**Local Bankruptcy Rules**") (i) authorizing the Debtors

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Triangle USA Petroleum Corporation (0717); Foxtrot Resources LLC (6690); Leaf Minerals, LLC (9522); Ranger Fabrication, LLC (6889); Ranger Fabrication Management, LLC (1015); and Ranger Fabrication Management Holdings, LLC (0750). The address of the Debtors' corporate headquarters is 1200 17th Street, Suite 2500, Denver, Colorado 80202.

to use cash collateral; (ii) granting adequate protection to the Prepetition Secured Parties (as defined below); (iii) modifying the automatic stay, to the extent set forth herein; (iv) granting related relief; and (v) scheduling a final hearing (the "**Final Hearing**") for approval of the Final Order. In support of the Motion, the Debtors rely upon and fully incorporate by reference the *Declaration of John R. Castellano in Support of Chapter 11 Petitions and First Day Papers* (the "**First Day Declaration**"),[2] filed with the Court concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105(a), 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2.

3.      Pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

**A.    The Chapter 11 Cases and the Debtors' Business**

4.    On June 29, 2016 (the "**Petition Date**"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

5.    The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.    To date, no creditors' committee has been appointed in the Chapter 11 Cases by the U.S. Trustee. No trustee or examiner has been appointed in the Chapter 11 Cases.

7.    TUSA and its Debtor subsidiaries comprise an independent, growth-oriented oil and gas exploration and development company emphasizing the acquisition and development of unconventional shale oil and natural gas resources in the Williston Basin of North Dakota and Montana. TUSA is a wholly owned subsidiary of Triangle Petroleum Corporation ("**TPC**"), a vertically integrated, independent energy company with three lines of business. In addition to TUSA's exploration and production business, TPC's wholly owned, non-Debtor subsidiary RockPile Energy Services, LLC and its affiliates provide oilfield services, focusing primarily on hydraulic pressure pumping and complementary services. Finally, TPC's joint venture, Caliber Midstream Partners, L.P., and its affiliates provide crude oil, natural gas, and fresh and produced water gathering, processing, and transportation services to TUSA and other customers in the Williston Basin. In addition to its three principal business lines, Triangle formerly operated a fabrication enterprise through Debtor Ranger Fabrication, LLC ("**Ranger**") and its subsidiaries. Ranger ceased operations in early 2016 and has commenced Chapter 11 Cases alongside its sister company, TUSA, in order to complete an orderly wind down.

3

8.      On June 29, 2016, the Debtors entered into a plan support agreement (the "**PSA**")

with the holders (collectively, the "**Ad Hoc Noteholder Group**") of approximately 73% in

aggregate principal amount of TUSA's 6.75% senior unsecured notes (the "**TUSA Notes**").

Pursuant to the PSA, the Ad Hoc Noteholder Group has agreed to support a pre-arranged chapter

11 plan under which the Debtors will substantially deleverage their balance sheets by, among

other things, exchanging the TUSA Notes for equity interests in reorganized TUSA. To enhance

liquidity and position the reorganized Debtors to capture growth opportunities as market

conditions rebound, the PSA further contemplates a new-money rights offering backstopped by

members of the Ad Hoc Noteholder Group. Triangle's business operations, corporate and capital

structure, and restructuring efforts are described in greater detail in the First Day Declaration.

**B.      The Debtors' Prepetition Secured Debt**

9.      On November 25, 2014, TUSA entered into a senior secured reserve-based credit

facility (the "**TUSA RBL Credit Facility**"), pursuant to that certain Second Amended and

Restated Credit Agreement (as may be amended from time to time, the "**RBL Credit**

**Agreement**") with Wells Fargo Bank, National Association, as administrative agent and issuing

lender ("**RBL Agent**"), and the lenders named therein (the "**RBL Lenders**" and, together with

the RBL Agent and all other Secured Parties (as defined in the RBL Credit Agreement), the

"**Prepetition Secured Parties**").

10.      Pursuant to the RBL Credit Agreement, TUSA and its wholly owned subsidiaries

(collectively, the "**RBL Credit Parties**") were, as of the Petition Date, indebted to the

Prepetition Secured Parties (a) in the aggregate principal amount of approximately

$305,814,685.66, plus any accrued interest, fees, and other amounts that may be due and payable

thereunder, (b) for all obligations and liabilities, contingent or otherwise, owed in respect of (i)

the Letters of Credit, which such obligations and liabilities were in the amount of $2,500,000, (ii)

the Banking Services Obligations and (iii) the Swap Obligations under any Hedging

Arrangements, and (c) other obligations outstanding under the RBL Credit Documents (the

"**Prepetition Secured Indebtedness**").

11.     To secure the Prepetition Secured Indebtedness under the RBL Credit Agreement,

the RBL Credit Parties entered into (a) that certain Second Amended and Restated Security

Agreement dated as of November 25, 2014 by and among TUSA, the other RBL Credit Parties,

and the RBL Agent (the "**RBL Security Agreement**") and (b) that certain Second Amended and

Restated Pledge Agreement dated as of November 25, 2014 by and among TUSA and the RBL

Agent (the "**RBL Pledge Agreement**" and, together with the RBL Security Agreement and all

other documents and agreements designated as Security Documents under the RBL Credit

Agreement, the "**RBL Security Documents**"). The RBL Credit Agreement, together with the

RBL Security Documents and all other Credit Documents (as defined in the RBL Credit

Agreement), are collectively referred to herein as the "**RBL Credit Documents**."

12.     Pursuant to the RBL Security Agreement, the RBL Credit Parties granted security

interests in, and continuing liens on, certain assets of the RBL Credit Parties (the "**Collateral**")

to and/or for the benefit of the Prepetition Securities Parties (the "**Prepetition Liens**"). The

Collateral includes any cash of the RBL Credit Parties that is Cash Collateral (as defined below)

and the assets of the RBL Credit Parties in or upon which a lien or other security interest has

been granted in favor or for the benefit of the Prepetition Secured Parties in connection with,

pursuant to, or under the applicable RBL Credit Documents that existed as of the Petition Date

and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring,

rents, and profits.

**RELIEF REQUESTED**

13.     By this Motion, the Debtors request entry of an Interim Order and, following the

Final Hearing, a Final Order under Bankruptcy Code sections 105(a), 361, 362, 363, 503, and

507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (a) authorizing

the Debtors to use Cash Collateral; (b) providing adequate protection to the Prepetition Secured

Parties; (c) modifying the automatic stay, to the extent set forth herein; (d) granting related relief;

and (e) scheduling a Final Hearing.

14.     Summarized below are the essential terms of the proposed Interim Order, with

references to the applicable sections of the relevant documents, in accordance with Bankruptcy

Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2.

| | |
|---|---|
| **Entities with Interest in the Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | The Prepetition Secured Parties. |
| **Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(ii)* *Local Bankruptcy Rule 4001-2(a)(ii)* | The RBL Credit Parties are authorized to use the Cash Collateral for the disbursements set forth in the Budget, subject to Permitted Deviation and other Non-Conforming Uses. ¶ 2(a). |
| **Material Terms and Duration of Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(iii)* *Local Bankruptcy Rule 4001-2(a)(ii)* | Subject to the Waiting Period, except in the case of paragraph 9(c) of the Interim Order where no Waiting Period shall apply, and other applicable terms and conditions, the Debtors' right to use Cash Collateral will terminate on the earliest to occur of: (a) thirty-five days after entry of the Interim Order, if no Final Order has been entered on or before such day; (b) the Restructuring Support Agreement has not been entered into by the Required Participating Noteholders (as defined in the Restructuring Support Agreement) and approved by the Court on or before August 15, 2016; (c) fourteen days after termination by either the Noteholders |

or the Companies (each as defined in the Restructuring Support Agreement) of the Restructuring Support Agreement, unless (i) during such 14-day period, such termination is waived or rescinded by the terminating party or parties, (ii) holders of at least two-thirds of the aggregate principal amount of the TUSA Notes (as defined in the Restructuring Support Agreement) then outstanding remain parties to the Restructuring Support Agreement or are parties to a restructuring support agreement with the same terms as the Restructuring Support Agreement (such restructuring support agreement, including all exhibits and restructuring or other term sheets related thereto, the "**Alternative RSA**"), (iii) the treatment of the "TUSA RBL" under the Restructuring Term Sheet (or Alternative RSA) and the "Milestones" under the Restructuring Support Agreement (or Alternative RSA) have not been modified in any respect and (iv) no other changes to the Restructuring Support Agreement (or Alternative RSA) material to the rights or interests of the Prepetition Secured Parties are made or proposed, without the written consent of the RBL Agent;

(d) March 15, 2017 (unless extended with the written consent of the RBL Agent, which extension thereof shall be effective without further application to, or approval by, the Court);

(e) the entry of this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the RBL Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Adequate Protection Collateral with a value in excess of $1,000,000, without the written consent of the RBL Agent, which consent may be withheld in its sole discretion;

(f) the Case of any of the RBL Credit Parties is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in the Case of any of the RBL Credit Parties, or the RBL Credit Parties seek entry of an order accomplishing any of the foregoing;

(g) the failure by the Debtors to observe or perform any of the material terms or material provisions contained herein;

(h) the RBL Credit Parties create, incur, or suffer to exist any

postpetition liens or security interests having a value greater than $1,000,000 in the aggregate on the Prepetition Collateral or Adequate Protection Collateral other than: (i) those granted pursuant to the Interim Order; and (ii) Liens arising under operating agreements, unitization and pooling agreements and orders, farmout agreements, gas balancing agreements, and other agreements, in each case that are customary in the oil, gas, and mineral production business and that are entered into by any RBL Credit Party in the ordinary course of business provided that (A) such Liens are taken into account in computing the net revenue interests and working interests of the RBL Credit Parties warranted in the RBL Security Documents or the RBL Credit Agreement, (B) such Liens do not secure borrowed money, (C) such Liens secure amounts that are not yet due or are being contested in good faith by appropriate proceedings, if such reserve as may be required by GAAP shall have been made therefor, and (D) such Liens are limited to the assets that are the subject of such agreements;

(i) (i) except as otherwise provided in the Interim Order and the Final Order, an order is entered granting another claim or lien pari passu with or senior to the Adequate Protection Liens or Adequate Protection Claims granted to the RBL Agent and the Prepetition Secured Parties under the Interim Order; (ii) an order of the Court is entered reversing, staying for a period in excess of five business days, vacating, or otherwise amending, supplementing, or modifying the Interim Order in a manner materially adverse to the Prepetition Secured Parties, in each case without the written consent of the RBL Agent; or (iii) the Debtors file a motion seeking to reverse, stay, vacate, or otherwise amend, supplement, or modify the Interim Order, in each case without the written consent of the RBL Agent;

(j) (i) any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (A) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Claims or (B) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or Adequate Protection Collateral, including the Cash Collateral or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties;

(k) subject to paragraph 3(b) of the Interim Order, the failure by the Debtors to adhere to the Budget except with respect to Permitted Deviations or other Non-Conforming Uses permitted by the RBL Agent, in its sole discretion;

(l) the failure by the RBL Credit Parties to make any payment required pursuant to the Interim Order when due;

(m) the effective date of any confirmed chapter 11 plan for the RBL Credit Parties;

(n) the entry of a subsequent order of the Court terminating the RBL Credit Parties' use of Cash Collateral;

(o) the filing by any RBL Credit Party of any (i) restructuring or plan support agreement, including without limitation the Restructuring Support Agreement or Alternative RSA, (ii) chapter 11 plan of reorganization or liquidation, or (iii) other agreement that provides for a restructuring of funded indebtedness, which, in each case, does not contain a provision for termination of the commitments under the RBL Credit Agreement and the indefeasible payment in full in cash of all obligations under the RBL Credit Documents on or before the effective date of such plan;

(p) any proceeding is commenced by the RBL Credit Parties seeking a sale of substantially all the RBL Credit Parties' assets (i) without the prior written consent of the RBL Agent or (ii) without expressly providing for the Prepetition Secured Parties' right to credit bid up to the full amount of the Prepetition Secured Indebtedness;

(q) the ending weekly cash balance reported by the RBL Credit Parties pursuant to paragraph 3(f)(v) is less than (i) $40,000,000 for any week during first 13-week period following the Petition Date; (ii) $25,000,000 for any week during the immediately following 13-week period; or (iii) $15,000,000 for any week during the 13-week period following thereafter; *provided, however*, that the weekly cash balance in (q)(ii) and (iii) shall be increased to $28,000,000 and $18,000,000 respectively in the event the Court determines that the Default Rate is calculated at a lower rate of interest than provided in Paragraph 3(c) of the Interim Order; and

| | |
|---|---|
| | (r) absent the prior written consent of the RBL Agent, any change or alteration that is adverse in any material respect to the Prepetition Secured Parties to (i) the RBL Credit Parties' cash management system, as such system existed on the Petition Date (other than changes in the ordinary course of business consistent with past practice) or (ii) any order entered by the Bankruptcy Court granting the Cash Management Motion.<br><br>¶ 9. |
| **Adequate Protection Provided to Prepetition Secured Parties for Use of Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | **Adequate Protection for the Prepetition Secured Parties.** The Debtors have agreed to provide the Prepetition Secured Parties with the following adequate protection package to secure payment of an amount equal to the Collateral Diminution:<br><br>(a) the Debtors will provide adequate protection liens to the RBL Agent, for the benefit of the Prepetition Secured Parties to the extent of any diminution in value of their interest in the Prepetition Collateral, subject to the Carve Out;<br><br>(b) the Debtors will grant the Prepetition Secured Parties allowed superpriority administrative claims arising pursuant to section 507(b) of the Bankruptcy Code against each of the RBL Credit Parties on a joint and several basis with priority over all other administrative claims in the Cases of the RBL Credit Parties (subject only to the Carve-Out), including all claims of the kind specified under sections 503(b) of the Bankruptcy Code;<br><br>(c) the Debtors shall make adequate protection payments to the RBL Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on the last business day of each calendar month after the entry of the Interim Order, in each case in an amount equal to all accrued and unpaid prepetition or postpetition interest, fees, and costs due and payable under the RBL Credit Agreement (including, without limitation, interest on loans, breakage costs, and accrued fees owing to the RBL Agent), and, in each case, such payments shall be calculated based on the Default Rate of 2.00% plus the Adjusted Base Rate plus the Applicable Margin under the RBL Credit Agreement; *provided, however*, that adequate protection payments in the amount of the letter of credit fees set forth in Section 2.7(b) of the RBL Credit Agreement shall be payable by the RBL |

Credit Parties as follows:

(i) in an amount equal to the greater of (A) the Default Rate of 2.00% plus the Adjusted Base Rate plus the Applicable Margin for Base Rate Advances per annum on the face amount of such Letter of Credit, and (B) $500 per Letter of Credit;

(ii) to the Issuing Lender (as defined in the RBL Credit Agreement), a fronting fee for each Letter of Credit equal to the greater of (A) 0.125% per annum on the face amount of such Letter of Credit and (B) $500; and

(iii) to the Issuing Lender such other usual and customary fees associated with any transfers, amendments, drawings negotiations, or reissuances of any Letter of Credit;

On the first business day following the entry of the Interim Order, the RBL Credit Parties will authorize and direct that all Interest Periods with respect any Eurodollar Advances existing on such business day be Converted to Base Rate Advances, and all accrued and unpaid interest and breakage costs related to such Advances will be due and payable (and any other accrued and unpaid interest existing as of such date) on the second business day following such Conversion date.  The Interim Order states that the payment of interest pursuant to paragraph 3(c) thereof will be without prejudice to the rights of the RBL Agent and the Prepetition Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the RBL Credit Agreement. Pending entry of the Final Order, notwithstanding anything in this paragraph 3(c) of the Interim Order or other provisions of the Interim Order to the contrary, the Debtors and the Prepetition Secured Parties reserve their rights with respect to (i) whether Base Rate Advances are the required Type of Advances in calculation of the Default Rate under the RBL Credit Agreement applicable to the loans during the pendency of these Chapter 11 Cases and (ii) in calculating such Default Rate, whether the Borrowings comprised of Eurodollar Advances outstanding as of the Petition Date must be Converted to a Borrowing comprised of Base Rate Advances on the first business day following the entry of the Interim Order, or whether such existing Eurodollar Advances may be

Converted to Base Rate Advances on the date the applicable Interest Period for such Eurodollar Advances expires (the "**Interest Challenge**").

(d) the Debtors will pay the reasonable and documented fees, expenses, and disbursements incurred by the RBL Agent;

(e) the Debtors will continue to comply with the financial reporting requirements set forth in the RBL Credit Agreement, as further described in the Interim Order;

(f) the Debtors will comply with the Budget, subject to certain variances set forth in the Interim Order;

(g) the Debtors have agreed to provide consultation rights to the RBL Agent for certain use, sale, or lease of Oil and Gas Properties with an aggregate fair market value in excess of $1,000,000; and

(h) the Debtors have agreed to use commercially reasonable efforts to provide one business day prior notice and drafts of certain communications and pleadings in these Cases.

¶ 3.

**Collateral Diminution.** As defined in the Interim Order, "Collateral Diminution" means an amount equal to any diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date resulting from the following: (a) the use by the Debtors of the Prepetition Collateral, including the Cash Collateral (whether in accordance with the terms and conditions of the Interim Order or otherwise); (b) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; (c) the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage of the Prepetition Collateral; (d) the imposition and use of the Carve-Out (to the extent that the Carve-Out is funded following the issuance of a Carve-Out Notice); or (e) any other decline in value.

¶ 4.

| | |
|---|---|
| **Professional Expense Carve-Out**<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | As used in the Interim Order, "Carve Out" means (a) any fees payable to the Clerk of the Court and statutory fees payable to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) allowed, accrued, and unpaid fees and |

out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of professionals retained by order of the Court (or whose application for retention is then pending, provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event (as defined below); (c) up to $3,000,000 of allowed and unpaid fees and expenses, regardless of when such fees and expenses become allowed by order of the Court, of professionals authorized to be retained by the Court, incurred after the occurrence of a Carve-Out Event; and (d) any and all reasonable fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), not to exceed $25,000. For purposes hereof, a "**Carve-Out Event**" shall occur upon the occurrence and during the continuance of a Termination Event (as defined below) and upon delivery of a written notice thereof by the RBL Agent to the Debtors (a "**Carve-Out Notice**"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses, and disbursements of professionals retained by order of this Court allowed by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code. Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (c) above with Cash Collateral without reduction of the Carve-Out in clause (c) above shall terminate, and upon receipt of such notice, the Debtors shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals with Cash Collateral is subject to the Carve-Out. A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court, as the same may be due and payable, without reducing the Carve-Out.

Notwithstanding anything in paragraph 7(b) of the Interim Order or elsewhere in the Interim Order to the contrary, no portion of the Carve-Out or any other Prepetition Collateral or Cash Collateral shall be used for professional fees and expenses incurred for any litigation or threatened litigation against the RBL Agent or any of the other Prepetition Secured Parties or for the purpose of challenging the

13

| | validity, extent, or priority of any claim, lien, or security interest held or asserted by the RBL Agent or the other Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests in or liens held by the RBL Agent and the Prepetition Secured Parties on the Prepetition Collateral or the Adequate Protection Collateral, or any Interest Challenge; *provided, however*, that an aggregate of $50,000 from the Carve-Out and the Prepetition Collateral, and any assets (or proceeds thereof) of the Debtors that do not constitute Prepetition Collateral, may be used to pay the Allowed Professional Fees of the Committee to investigate the Prepetition Liens as provided in paragraph 18 of the Interim Order. For the avoidance of doubt, expenditures made in connection with such investigation prior to the delivery of a Carve-Out Notice shall not reduce the Carve-Out. ¶ 7. |
|---|---|
| **Waiver of Automatic Stay**<br>*Bankruptcy Rule 4001(c)(1)(B)(iv)* | The automatic stay under Bankruptcy Code section 362 is vacated and modified to the extent necessary to permit the RBL Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and Adequate Protection Collateral, including the Cash Collateral, provided for in the Interim Order, the RBL Credit Documents, and applicable law, unless the Court has determined that a Termination Event has not occurred or is not continuing. During the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred or is continuing. Nothing in the Interim Order shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief. ¶ 10. |

15.    In addition, in compliance with Local Bankruptcy Rule 4001-2(a)(i), the Debtors call attention to the following provisions of the proposed Interim Order:

(a)      *Debtors' Stipulations.* Pursuant to paragraph C of the proposed Interim Order, the

Debtors stipulate to the validity and enforceability of the claims and liens of the Prepetition

Secured Parties. The Interim Order provides that these stipulations will bind all parties in interest

in the Chapter 11 Cases unless a challenge is commenced prior to the earlier (i) if a Committee

has been appointed on or before the 30th calendar day following the Petition Date, the earlier of

(A) the 60th calendar day after the date of appointment of such Committee by the United States

Trustee or (B) 10 calendar days prior to the original date scheduled for a hearing to consider

confirmation of a chapter 11 plan in the Chapter 11 Cases or (ii) in the event no Committee is

appointed on or before the 30th calendar day following the Petition Date, on or before the earlier

of (A) the 75th calendar day after the date of entry of the Interim Order or (B) 10 calendar days

prior to the original date scheduled for a hearing to consider confirmation of a chapter 11 plan in

the Chapter 11 Cases (the "**Challenge Deadline**"). This deadline is consistent with the time

periods customarily approved in financing orders in this district. The Prepetition Secured Parties

required the stipulations set forth in paragraph C of the Interim Order, and the Challenge

Deadline and related procedures, as a condition to the consensual use of Cash Collateral. *See*

Interim Order ¶ 16.

(b)      *Section 506(c) Waiver.* Subject to entry of the Final Order, the Debtors waive

their right to "surcharge" the Prepetition Secured Parties' Collateral under section 506(c) of the

Bankruptcy Code. The Prepetition Secured Parties required that the Debtors waive their rights

under Bankruptcy Code section 506(c) as a condition to the consensual use of Cash Collateral.

*See* Interim Order ¶ 11.

(c)      *Liens on Avoidance Actions*. The proposed Interim Order would grant senior,

priming Adequate Protection Liens on all proceeds of the Debtors' estate causes of action. The

Prepetition Secured Parties required priming liens on the proceeds of the Debtors' estate causes of action as a condition to the consensual use of Cash Collateral. *See* Interim Order ¶ 3(a)(i).

(d)     *Equities of the Case Waiver.* The "equities of the case" provision of Bankruptcy Code section 552(b) is an equitable exception to the general rule that a secured creditor's prepetition security interests extend to property of the debtor acquired after the petition date that constitutes proceeds of prepetition collateral. Pursuant to the Interim Order, the RBL Agent and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and, subject to entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the RBL Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral. The Prepetition Secured Parties required a waiver of the "equities of the case" exception as a condition to the consensual use of Cash Collateral. *See* Interim Order ¶ 21.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### A.     Use of Cash Collateral

16.     Although the Debtors' capital structure is not sustainable in the long term, the Debtors have sufficient liquidity to administer a value-maximizing chapter 11 process. However, much of the Debtors' cash is Cash Collateral. Thus, the Debtors require use of their Cash Collateral to operate their businesses in the ordinary course and to pay the costs associated with these cases. Without access to Cash Collateral, the Debtors will rapidly exhaust their liquidity and could be forced to liquidate.

17.     The Debtors' negotiations with the RBL Agent concerning the terms and conditions were protracting and challenging. The Debtors believe that the terms upon which the parties ultimately settled, although not ideal, represent the most favorable terms the Debtors

reasonably could have achieved under the circumstances. Considering the overarching benefits

of a negotiated and consensual cash collateral order, the Debtors submit that they should be

authorized to use Cash Collateral on the terms described herein. *See* 11 U.S.C. § 363(c)(2) (court

may authorize use of cash collateral if "each entity that has an interest in such cash collateral

consents").

### B.    Adequate Protection for Prepetition Credit Parties

18.    Section 363(e) of the Bankruptcy Code provides that the Bankruptcy Court may

condition the use of collateral, including cash collateral, as necessary to provide adequate

protection to a secured party with an interest in such collateral. *Resolution Trust Corp. v.*

*Swedeland Dev. Grp., Inc.* (*In re Swedeland Dev. Grp., Inc.*), 16 F.3d 552, 564 (3d Cir. 1994)

(observing that adequate protection means what is necessary to shield a secured creditor from the

diminution in value of its interest in the collateral during the period of use). As a condition to the

use of Cash Collateral, the Prepetition Secured Parties required an adequate protection package

consisting of Adequate Protection Liens, Adequate Protection Claims, current cash payment of

interest on the RBL Credit Agreement at the Default Rate,[3] and the payment of reasonable and

documented fees and expenses of the RBL Agent in connection with the Chapter 11 Cases, to the

extent of the aggregate diminution in value of the applicable Prepetition Secured Parties' interest

in the Prepetition Collateral.[4]

19.    The proposed adequate protection obligations constitute "adequate protection"

within the meaning of Bankruptcy Code section 363(e) and are reasonable and appropriate given

---

[3]    As summarized in the chart above, the Debtors and the Prepetition Secured Parties have reserved their rights as to the correct underlying rate on which to calculate the Default Rate.

[4]    The terms of the Adequate Protection Obligations are summarized in greater detail above.

the circumstances. The form and extent of adequate protection necessary to satisfy section 363(e)

ultimately depends on the facts and circumstances of the case. *See In re Swedeland Dev. Grp.,*

*Inc.*, 16 F.3d at 564 ("[A] determination of whether there is adequate protection is made on a

case by case basis."). However, Bankruptcy Code section 361 enumerates certain standard forms

of adequate protection, which include replacement liens and adequate protection claims. *See* 11

U.S.C. § 361. Accordingly, the proposed use of Cash Collateral complies with Bankruptcy Code

section 363(e). And, considering the Debtors' urgent need to use Cash Collateral to fund ongoing

business operations and the costs of these Chapter 11 Cases, the proposed adequate protection

obligations are undoubtedly in the best interests of the Debtors' estates as a whole.

**C.     Modification of the Automatic Stay**

20.    The proposed Interim Order would modify the automatic stay established

pursuant to section 362 of the Bankruptcy Code to permit the Prepetition Secured Parties to take

certain actions upon a Termination Event without the need for further order of this Court. Before

exercising remedies, however, the Prepetition Secured Parties must provide five business days'

written notice to counsel for the Debtors, counsel to the Committee, counsel to the Ad Hoc

Noteholder Group, and the U.S. Trustee, except with respect to one specified event.

21.    The Debtors believe that the stay modification provisions of the proposed Interim

Order are reasonable given the Debtors' circumstances. In particular, the Debtors believe that the

proposed terms of the stay waiver, including the five business day Waiting Period, sufficiently

accommodate the Debtors' need to safeguard their estates should a dispute arise with respect to a

contemplated exercise of remedies. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, Case No.

15-12284 (LSS) (Bankr. D. Del. Nov. 13, 2015); *In re A123 Sys., Inc.*, 12-12859 (KJC) (Bankr.

D. Del. Nov. 26, 2012); *In re Graceway Pharm., LLC*, Case No. 11-13036 (MFW) (Bankr. D.

Del. Nov. 7, 2011); *In re Sportsman's Warehouse, Inc.*, Case No. 09-10990 (CSS) (Bankr. D.

Del. Apr. 16, 2009).[5] Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

## RESERVATION OF RIGHTS

22.     Except as expressly indicated, nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

23.     The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). In the context of preliminary injunctions, the Third Circuit has interpreted the language "immediate and irreparable harm" to refer to a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages are inadequate. *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). The harm also must be actual and imminent, not speculative or

---

[5]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion, but are available on request.

unsubstantiated. *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)

24.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

25.     Notice of this Motion will be given to: (a) the U.S. Trustee, (b) counsel to the RBL Agent, (c) counsel to the TUSA Unsecured Notes Trustee, (d) counsel to the Ad Hoc Noteholder Group, (e) counsel to Caliber, (f) the parties included on the Debtors' consolidated list of the 20 largest unsecured creditors, and (g) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

26.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

The Debtors respectfully request that this Court enter the Interim Order, substantially in the form annexed hereto and, following the Final Hearing, the Final Order, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      June 30, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Sarah E. Pierce*
Sarah E. Pierce (I.D. No. 4648)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

– and –

George N. Panagakis (*pro hac vice pending*)
Ron E. Meisler (*pro hac vice pending*)
Christopher M. Dressel (*pro hac vice pending*)
Renu P. Shah (*pro hac vice pending*)
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
TRIANGLE USA PETROLEUM                                        :    Case No. 16-11566 (___)
CORPORATION, *et al.*,                                        :
                                                              :    Jointly Administered
                      Debtors.[1]                             :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS**
**105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 2002, 4001, AND 9014,**
**AND LOCAL BANKRUPTCY RULE 4001-2 (I) AUTHORIZING DEBTORS**
**TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO**
**PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY;**
**(IV) GRANTING RELATED RELIEF; AND (V) SCHEDULING A FINAL HEARING**

          Upon the motion (the "**Motion**") of the above-referenced debtors, as debtors in

possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**"), pursuant to

sections 105(a), 361, 362, 363, and 507 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Local**

**Rules**"), seeking, among other things:

          (a)     authorization for the RBL Credit Parties, pursuant to sections 105(a), 361,
                  362, 363, and 507 of the Bankruptcy Code to (i) use cash collateral, as
                  such term is defined in section 363(a) of the Bankruptcy Code ("**Cash**

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Triangle USA
       Petroleum Corporation (0717); Foxtrot Resources LLC (6690); Leaf Minerals, LLC (9522); Ranger Fabrication,
       LLC (6889); Ranger Fabrication Management, LLC (1015); and Ranger Fabrication Management Holdings,
       LLC (0750). The address of the Debtors' corporate headquarters is 1200 17th Street, Suite 2500, Denver,
       Colorado 80202.

Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this Order (this "**Interim Order**"), and (ii) provide adequate protection to Wells Fargo Bank, N. A., as Administrative Agent and Issuing Lender (in such capacity, the "**RBL Agent**") under the RBL Credit Agreement (as defined herein) and the other Prepetition Secured Parties (as defined herein);

(b)     subject to entry of the Final Order (as defined herein), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "**Avoidance Actions**") or any other state or federal law;

(c)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(d)     subject to entry of the Final Order, waiver of all rights to surcharge any Prepetition Collateral or Adequate Protection Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     waiver of the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral;

(f)     a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis; and

(g)     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h), to the extent applicable);

and the Court having held an interim hearing on the Motion (the "**Interim Hearing**") on [DATE]; and, pursuant to Bankruptcy Rules 2002 and 4001 and Bankruptcy Local Rule 4001-2, notice of the Motion and relief sought at the Interim Hearing having been given by the Debtors; and the Court having considered the Budget (defined below) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this

Interim Order is in the best interests of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

        **A.**      **Petition Date**. On June 29, 2016 (the "**Petition Date**"), Triangle USA Petroleum Corporation ("**TUSA**") and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**"). Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

        **B.**      **RBL Credit Agreement**. Prior to the Petition Date, the RBL Lenders (as defined herein) made certain loans, advances, and other extensions of credit pursuant to and in accordance with the terms and conditions of that certain Second Amended and Restated Credit Agreement, dated as of November 25, 2014 (as amended, restated, or otherwise modified from time to time, the "**RBL Credit Agreement,**" and together with all other documentation executed in connection therewith, the "**RBL Credit Documents,**" which RBL Credit Documents include, but are not limited to, (i) Amendment No. 1 to Second Amended and Restated Credit Agreement, dated as of April 30, 2015 and (ii) the RBL Security Documents (defined below), among, *inter alia*, TUSA, as Borrower, the RBL Agent, the lenders named therein (such lenders, the "**RBL Lenders**"), the issuers of letters of credit thereunder ("**Issuers**") and for the benefit of

each other "**Secured Party**" (as defined in the RBL Credit Agreement)[2] (the RBL Agent, the RBL Lenders, the Issuers, and the other Secured Parties, collectively, the "**Prepetition Secured Parties**")).

C.      **Debtors' Admissions With Respect to the Prepetition Secured Indebtedness**. The Debtors admit, stipulate, and agree that: As of the Petition Date, TUSA and the Subsidiary Guarantors (collectively, the "**RBL Credit Parties**") were justly and lawfully indebted and liable, jointly and severally, without defense, counterclaim, or offset, (i) in the aggregate principal amount of approximately $305,814,685.66, plus accrued interest, fees, and other costs, expenses, charges, and amounts due and payable under the RBL Credit Documents, (ii) for all obligations and liabilities, contingent or otherwise, owed in respect of (A) the Letters of Credit, which such obligations and liabilities were in the amount of $2,500,000, (B) the Banking Services Obligations and (C) the Swap Obligations under any Hedging Arrangements, and (iii) other obligations outstanding under the RBL Credit Documents (collectively, the "**Prepetition Secured Indebtedness**"). The Prepetition Secured Indebtedness, including the amounts specified in this paragraph C, constitutes a legal, valid, and binding obligation of the RBL Credit Parties, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, or defense to the Prepetition Secured Parties. None of the RBL Credit Parties, either collectively or individually, has or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the RBL Credit Agreement.

affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Indebtedness. The Prepetition Secured Indebtedness and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the RBL Credit Agreement, on account thereof, or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

> D.    **Debtors' Admissions With Respect to Collateral and Liens.** The Debtors admit, stipulate and agree that:

> > i.    Pursuant to (a) that certain Second Amended and Restated Security Agreement dated as of November 25, 2014 by and among the RBL Credit Parties and the RBL Agent (as amended, restated, supplemented, or otherwise modified from time to time, the "**RBL Security Agreement**"); (b) that certain Second Amended and Restated Pledge Agreement dated as of November 25, 2014 by and among TUSA and the RBL Agent (the "**RBL Pledge Agreement**"); and (c) all Mortgages (as defined in the RBL Credit Agreement) securing the RBL Credit Parties' obligations under the RBL Credit Documents (together with the RBL Security Agreement, the RBL Pledge Agreement and all other deeds of trust and Security Documents, the "**RBL Security Documents**"), the RBL Credit Parties granted security interests in, and continuing liens on, substantially all of their assets (the "**Prepetition Collateral**") to and/or for the benefit of the Prepetition Secured Parties (the "**Prepetition Liens**"). The Prepetition Collateral includes (1) approximately 99% by value of the RBL Credit

5

Parties' Proven Reserves and the Oil and Gas Properties relating thereto; (2) any cash of the RBL Credit Parties; and (3) all other assets of the RBL Credit Parties, in addition to the Oil and Gas Properties, in or upon which a lien, mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the RBL Credit Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits of the Prepetition Collateral.

ii.      The RBL Security Documents are valid and binding agreements and obligations of the RBL Credit Parties, and the Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and liens, which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

iii.     The RBL Agent has properly perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, deeds of trust, or other required documents against the RBL Credit Parties and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and liens.

E.    **Debtors' Admissions With Respect to Cash Collateral**. The Debtors admit, stipulate, and agree that all cash, including all cash proceeds of the Prepetition Collateral, the RBL Credit Parties' banking, checking, or other deposit accounts with financial institutions as of the Petition Date or deposited into the RBL Credit Parties' banking, checking, or other deposit accounts with financial institutions after the Petition Date that is property of the RBL Credit Parties, constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105(a), 362, and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, for any diminution in value of their respective interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral; the use, sale, or lease of the Prepetition Collateral; and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

F.    **Admissions Binding**. The Debtors' admissions shall be binding on the Debtors and their respective representatives, successors, and assigns and, subject to any action timely commenced by any official creditors committee appointed in the Cases, (the "**Committee**") or any other party in interest prior to the Challenge Deadline (as defined herein), on each of the Debtors' estates and all creditors thereof and each of their respective representatives, successors, and assigns, including any trustee or representative appointed in these Cases.

G.    **Releases; Investigation**. Each Debtor hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code),

counterclaims, causes of action, defenses, or setoff rights against each Prepetition Secured Party (in its capacity as such) arising prior to the date of the entry of this Interim Order, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claims arising under or pursuant to section 105(a) or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

      **H.**     **Need to Use Cash Collateral**. The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2 and have an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget (as defined herein)), in order to, among other things, preserve, maintain, and maximize the value of their assets and businesses. An immediate and critical need exists for the RBL Credit Parties to use the Cash Collateral, consistent with the Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases. The ability of the Debtors to maintain liquidity through the use of the Prepetition Collateral, including the Cash Collateral, is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed. Accordingly, the Debtors have demonstrated good and sufficient cause for the relief granted herein.

      **I.**     **Notice**. Notice of the requested relief sought at the Interim Hearing was provided by the Debtors to: (a) the United States Trustee, (b) counsel to the RBL Agent, (c) counsel to the TUSA Unsecured Notes Trustee, (d) counsel to the Ad Hoc

Group of Noteholders, (e) counsel to Caliber, (f) the parties included on the Debtors'
consolidated list of the 20 largest unsecured creditors, and (g) all parties entitled to notice
pursuant to Local Bankruptcy Rule 9013-1(m). Given the nature of the relief sought, the
foregoing notice of the Interim Hearing was, in the Debtors' good faith belief, the best
available under the circumstances and complies with Bankruptcy Rules 2002, 4001(b)
and (d), and 9014, Bankruptcy Local Rule 4001-2, and section 102(1) of the Bankruptcy
Code, as required by section 363 of the Bankruptcy Code. No further notice of, or hearing
on, the relief sought at the Interim Hearing and the relief granted herein is necessary or
required.

      **J.**    **Consent by Prepetition Secured Parties**. The Prepetition Secured
Parties consent to the RBL Credit Parties' use of Cash Collateral, in accordance with and
subject to the terms and conditions provided for in this Interim Order.

      **K.**    **Jurisdiction and Venue**. Consideration of the Motion constitutes
a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over
this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157
and 1334. Venue for the Cases and the proceedings on the Motion is proper in this district
pursuant to 28 U.S.C. §§ 1408 and 1409.

      **L.**    **Arm's-Length, Good Faith Negotiations**. The terms of this
Interim Order were negotiated in good faith and at arm's-length between the Debtors, the
RBL Agent, and the other Prepetition Secured Parties and are within the Debtors'
business judgment.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted**. The Motion is granted in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      **Authorization to Use Cash Collateral.**

(a)      Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the RBL Credit Parties' use of Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein), solely and exclusively for the disbursements set forth in the 13-week Budget attached as **Exhibit 1** hereto (as such budget may be modified from time to time by the RBL Credit Parties with the prior written consent of the RBL Agent as set forth in this paragraph, the "**Budget**"), subject to Permitted Deviation and other Non-Conforming Use (as defined below), and for no other purposes. On the Friday of the third week covered by the initial Budget, and every four Fridays thereafter, or at such other times as the RBL Credit Parties may elect, the RBL Credit Parties shall provide counsel to the RBL Agent with an updated budget, in substantially the same format as **Exhibit 1** hereto, for the 13-week period commencing on the Saturday eight days thereafter, which, upon acceptance by the RBL Agent (not to be unreasonably withheld), shall become the Budget for such period for purposes of this Interim Order (each, a "**Supplemental Budget**"), without further notice, hearing, or Court order. In the event the RBL Credit Parties and the RBL Agent fail to agree on a Supplemental Budget prior to the expiration of the 13-week period covered by the existing Budget or Supplemental Budget, as applicable, the RBL Credit Parties' right to use Cash Collateral shall terminate.

(b)      Notwithstanding the Budget, so long as no Termination Event has occurred, the RBL Credit Parties shall be authorized to use Cash Collateral in accordance with this Interim Order in an amount that would not cause the RBL Credit Parties to use Cash Collateral for operating disbursements and capital expenditures, taken together, in an aggregate amount greater than 115% of operating disbursements and capital expenditures budgeted for any successive four-week period set forth in the Budget in effect at such time (each such four-week period, the "**Budget Period**") pursuant to the Budget then in effect (a "**Permitted Deviation**"); *provided*, *however*, that (i) to the extent the amount budgeted for operating disbursements and

10

capital expenditures, taken together, during a particular Budget Period exceeds the amount actually paid in respect of such line item during such Budget Period (the difference between the budgeted amount and the amount actually paid, the "**Carry Forward**"), the RBL Credit Parties shall be authorized to use the Carry Forward toward operating disbursements and capital expenditures, taken together, during any subsequent four-week Budget Period thereafter; and (ii) the RBL Agent may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (in addition to Permitted Deviations and the Carry Forward, each such use of Cash Collateral, a "**Non-Conforming Use**"). The RBL Credit Parties shall be authorized pursuant to this Interim Order to use Cash Collateral for any such Non-Conforming Use without further Court approval.

(c)     Notwithstanding anything to the contrary in this Interim Order, the Debtors shall not be authorized to use Cash Collateral to pay any fees, expenses, or claims owed by any Debtor or any Affiliate of a Debtor that is not an RBL Credit Party. For the avoidance of doubt, nothing in this paragraph 2(c) shall prohibit the use of Cash Collateral by an RBL Credit Party to pay an Intercompany Transaction, as defined in the Cash Management Motion (as defined below), that is a valid, ordinary course obligation of such RBL Credit Party and such payment is (i) authorized by the order granting the Cash Management Motion and (ii) consistent with the Budget, subject to Permitted Deviation.

3.     **Adequate Protection for the Prepetition Secured Parties**. In addition to all the existing security interests and Prepetition Liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the RBL Credit Parties' use of the Cash Collateral as provided for in this Interim Order, the RBL Credit Parties hereby grant the following:

(a)     **Adequate Protection Liens**. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the RBL Credit Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, deeds of trust, or other similar documents, or by possession or control, to the RBL Agent, for the benefit of the Prepetition Secured Parties (all property identified in clauses (i) and (ii) of this paragraph 3(a) being collectively referred to as the "**Adequate Protection Collateral**" and all liens and security interests, the "**Adequate Protection Liens**"):

(i)     *Liens Senior to Other Liens*. A valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien on the RBL Credit Parties' now-owned and hereafter-acquired real and personal property, assets, and rights of any kind or nature, wherever located, including,

without limitation, the Prepetition Collateral and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory, all oil, gas, and other hydrocarbons, and all products and substances derived therefrom (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, commodity hedging agreements and similar agreements, owned real estate, real property leaseholds, oil and gas leases, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (other than Avoidance Actions, but including the proceeds thereof), and all proceeds of the foregoing, senior to any other security interests or liens, subject only to (A) the Carve-Out (as defined below) and (B) valid, perfected, and enforceable liens (if any) which were senior to the Prepetition Secured Parties' Prepetition Liens or security interests as of the Petition Date and to valid and unavoidable liens in existence immediately prior to the Petition Date which are senior to the Prepetition Liens and security interests of the Prepetition Secured Parties that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, any such liens, the "**Prior Senior Liens**").

(ii)    *Liens Junior to Prior Senior Liens*. A valid, binding, continuing, enforceable, fully-perfected lien on and security interest in all prepetition and postpetition property of the RBL Credit Parties (other than the property described in clause (i) of this paragraph 3(a)) whether now existing or hereafter acquired, that is immediately junior to the Prior Senior Liens. For the avoidance of doubt, the Adequate Protection Liens granted pursuant to this paragraph 3(a)(ii) shall be subject to the Carve-Out.

(iii)    The RBL Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, deeds of trust, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Adequate Protection Liens granted to it hereunder. Whether or not the RBL Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of this Interim Order. A certified copy of this Interim Order may, in the discretion of the RBL Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording. The RBL Credit Parties shall execute and deliver to the

RBL Agent all such agreements, financing statements, instruments, and other documents as the RBL Agent may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)    **Adequate Protection Claims**. Effective as of the Petition Date, an allowed superpriority administrative expense claim arising pursuant to section 507(b) of the Bankruptcy Code against each of the RBL Credit Parties on a joint and several basis with priority over all other administrative claims in the Cases of the RBL Credit Parties (subject only to the Carve-Out), including all claims of the kind specified under sections 503(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), which administrative claims shall have recourse to and be payable from all prepetition and postpetition property of the RBL Credit Parties, including any proceeds or property recovered in respect of any Avoidance Actions. For avoidance of doubt, the Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 9.1 of the RBL Credit Agreement incurred in connection with the Cases of the RBL Credit Parties.

(c)    **Adequate Protection Payments**. The RBL Credit Parties are authorized and directed to pay to the RBL Agent for the ratable benefit of the Prepetition Secured Parties adequate protection payments on, except as provided below with respect to the initial adequate protection payment, the last business day of each calendar month after the entry of the Interim Order, in each case in an amount equal to all accrued and unpaid prepetition or postpetition interest, fees, and costs due and payable under the RBL Credit Agreement (including, without limitation, interest on loans, breakage costs, and accrued fees owing to the RBL Agent), and, in each case, such payments shall be calculated based on the Default Rate of 2.00% plus the Adjusted Base Rate plus the Applicable Margin under the RBL Credit Agreement; *provided, however*, that adequate protection payments in the amount of the letter of credit fees set forth in Section 2.7(b) of the RBL Credit Agreement shall be payable by the RBL Credit Parties as follows: (i) in an amount equal to the greater of (A) the Default Rate of 2.00% plus the Adjusted Base Rate plus the Applicable Margin for Base Rate Advances per annum on the face amount of such Letter of Credit, and (B) $500 per Letter of Credit; (ii) to the Issuing Lender (as defined in the RBL Credit Agreement), a fronting fee for each Letter of Credit equal to the greater of (A) 0.125% per annum on the face amount of such Letter of Credit and (B) $500; and (iii) to the Issuing Lender such other usual and customary fees associated with any transfers, amendments, drawings negotiations, or reissuances of any Letter of Credit. On the first business day following the entry of the Interim Order, the RBL Credit Parties hereby authorize and direct that all Interest Periods with respect any Eurodollar Advances existing on such business day to be Converted to Base Rate Advances, and all accrued and unpaid interest and breakage costs related to such Advances shall be due and payable (and any other accrued and unpaid interest existing as of such date) on the second business day following such Conversion date.  For the avoidance of doubt, the payment of interest pursuant to this paragraph shall be without prejudice to the rights of the RBL Agent and the Prepetition Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the RBL Credit Agreement. Pending entry of the Final Order, notwithstanding anything in this paragraph or elsewhere in this Interim Order to the contrary, the Debtors and the Prepetition Secured Parties reserve their rights with respect to (i) whether Base Rate Advances are the required Type of Advances in calculation of the Default Rate under the RBL Credit Agreement applicable to the loans during the pendency of these

13

chapter 11 cases and (ii) in calculating such Default Rate, whether the Borrowings comprised of Eurodollar Advances outstanding as of the Petition Date must be Converted to a Borrowing comprised of Base Rate Advances on the first business day following the entry of the Interim Order, or whether such existing Eurodollar Advances may be Converted to Base Rate Advances on the date the applicable Interest Period for such Eurodollar Advances expires (the "**Interest Challenge**").

(d)     **Other Covenants**. The RBL Credit Parties shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the *Motion of Debtors for Order under Bankruptcy Code Sections 105(a), 363, and 503(b), Bankruptcy Rules 6003 and 6004, and Local Bankruptcy Rule 2015-2 (I) Authorizing the Continued Maintenance of Prepetition Bank Accounts and Payment of Related Prepetition Obligations, (II) Authorizing Continued Use of Existing Cash Management System, (III) Authorizing Continued Use of Existing Business Forms, and (IV) Authorizing the Continuation of, and Accordance of Administrative Expense Priority Status to, Intercompany Transactions* (the "**Cash Management Motion**"), which Cash Management Motion shall not be amended or modified without the consent of the RBL Agent. The RBL Credit Parties shall not use, sell, or lease any Oil and Gas Properties with an aggregate fair market value in excess of $1,000,000 outside the ordinary course of business, or seek authority of this Court to do the same, without prior consultation with the RBL Agent at least three business days prior to the date on which the RBL Credit Parties seek the authority of this Court for such use, sale, or lease; for the avoidance of doubt nothing herein shall limit the Debtors' right to use, sell, or lease assets in the ordinary course of business. The RBL Credit Parties shall comply with the covenants contained in Sections 5.3 and 5.10 of the RBL Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(e)     **Fees and Expenses**. As additional adequate protection, the RBL Credit Parties shall pay in cash: (i) immediately upon the entry of this Interim Order, the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the RBL Agent under the RBL Credit Agreement arising prior to the Petition Date; (ii) the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the RBL Agent under the RBL Credit Agreement arising subsequent to the Petition Date; and (iii) the reasonable and documented legal fees, expenses, and disbursements of the RBL Agent and the Prepetition Secured Parties incurred after the Petition Date in connection with any investigation of such Prepetition Secured Parties pursuant to paragraph 18 of this Interim Order and any request for standing to pursue claims against such Prepetition Secured Parties. The payment of the fees, expenses and disbursements set forth in this paragraph 3(e) of this Interim Order (including the professional fees and expenses of Bracewell LLP, Conway MacKenzie, Womble Carlyle Sandridge & Rice, LLP, and any other professionals or advisors retained by or on behalf of the RBL Agent, provided that such professional fees and expenses are reasonable and documented both individually and in the aggregate) shall be made within 10 days after the receipt by the Debtors, the Committee, and the United States Trustee (the "**Review Period**") of invoices thereof (the "**Invoiced Fees**") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts

14

arising before and after the Petition Date; *provided*, *however*, that the Debtors, the Committee, the Ad Hoc Noteholder Group, and the United States Trustee shall have the right to dispute the reasonableness of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") by delivering to the RBL Agent or its counsel a written notice of objection to the Disputed Invoiced Fees within the Review Period, in which case the RBL Credit Parties shall pay the Invoiced Fees other than the Disputed Invoiced Fees. If such objection is not resolved consensually between the RBL Agent and the objecting party, the objecting party may file with the Court a motion or other pleading, on at least 10 days' prior written notice to the RBL Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(f)    **Reporting**. As additional adequate protection to the Prepetition Secured Parties, the RBL Credit Parties shall comply with the reporting requirements set forth in Section 5.2 of the RBL Credit Agreement and shall provide the following additional reporting to the RBL Agent:

(i)    Weekly (or less frequently as may be agreed to between the RBL Credit Parties and the RBL Agent) calls with the RBL Agent and its advisors, during regular business hours and with reasonable advance notice, on topics related to the Debtors' operations, cash position, the RBL Agent's rights under this Interim Order or the Final Order and the Debtors' chapter 11 cases;

(ii)    A copy of each update to the Debtors' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(iii)    Presentations by the RBL Credit Parties and/or their advisors to the Prepetition Secured Parties at times and places as the RBL Agent may reasonably request in writing (including via email);

(iv)    Promptly, but in any event by the 25th day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the RBL Agent, of (A) an accounts payable aging and an accounts receivable aging and (B) all written demands or claims related to or asserting any liens in respect of property or assets of the RBL Credit Parties (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens, and other similar liens) if the amount demanded or claimed exceeds $100,000 individually or $500,000 in the aggregate;

(v)    On or before each Thursday of each calendar week, (A) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget, which report and reconciliation shall be in form and substance reasonably satisfactory to the RBL Agent and (B) a statement setting forth in reasonable detail the cash balance for each deposit account of the RBL Credit Parties as of the previous Friday;

(vi)    Promptly, and in any event by the 25th day of each month or by the 30th day after each fiscal quarter end, beginning with the year-to-date period ended April 2016, a monthly and year-to-date income statement, balance sheet, and monthly and year-to-date detail of capital expenditures and workovers, which, in each case, may be unaudited and presented without footnotes;

(vii)    A copy of any written notice of the occurrence of a Noteholder Termination Event or Company Termination Event, in each case within 24 hours of the delivery of such written notice by the Participating Noteholders or the Companies, respectively, under the Restructuring Support Agreement;[3]

(viii)    (A) As soon as available but in any event on or before October 1 of each year an Independent Engineering Report, in form and substance acceptable to the RBL Agent, dated effective as of the immediately preceding September 1st; (B) as soon as available but in any event on or before April 1 of each year an Independent Engineering Report, in form and substance acceptable to the RBL Agent, dated effective as of the immediately preceding January 31st; and (C) such other information as may be reasonably requested by the RBL Agent or any Prepetition Secured Party with respect to the Oil and Gas Properties included or to be included in the Borrowing Base under the RBL Credit Agreement; and

(ix)    Such other reports and information as the RBL Agent may reasonably request.

(g)    **Pleadings and Communications with Bankruptcy Court**. The Debtors shall use commercially reasonable efforts to provide one business day's prior notice and drafts of (i) any written communications with the Bankruptcy Court or the office of the United States Trustee or (ii) any pleadings filed in the Cases, in each case relating directly to the RBL Credit Agreement, the RBL Credit Documents, this Interim Order, or the Final Order, motions to buy or sell assets under section 363 of the Bankruptcy Code (including bidding procedures related thereto), the Restructuring Support Agreement, any chapter 11 plan or disclosure statement relating thereto, and any other pleadings material to the Prepetition Secured Parties' rights.

(h)    **Asset Sales; Application of Proceeds**. Unless otherwise agreed to by the RBL Agent and the RBL Credit Parties in writing, all sales and other dispositions (including casualty and condemnation events) of Prepetition Collateral ("**Collateral Sales**") shall be in exchange for 100% cash consideration. Upon any Collateral Sale outside of the ordinary course of the RBL Credit Parties' business (which, for the avoidance of doubt, shall in each case be subject to Court approval), the RBL Credit Parties shall pay 100% of the net cash proceeds of such Collateral Sale to the RBL Agent, which proceeds shall be applied to permanently reduce the Prepetition Secured Indebtedness until paid in full; *provided* that (A) if there is no

---

[3] For purposes of this Interim Order, "**Restructuring Support Agreement**" means that certain Plan Support Agreement, dated as of June 29, 2016, by and among the Debtors and the noteholders party thereto. Capitalized terms used in this paragraph 3(f)(vii) shall have the meanings given to them in the Restructuring Support Agreement.

outstanding funded, non-contingent Prepetition Secured Indebtedness and there is outstanding contingent Prepetition Secured Indebtedness, or (B) if a bona fide dispute exists with respect to whether the assets subject to the Collateral Sale constitute Prepetition Collateral, which dispute has been preserved or is currently being prosecuted, then proceeds of such Collateral Sale shall be held in a segregated account with the RBL Agent pending the resolution of such dispute.

4.    **Collateral Diminution**. For purposes of this Interim Order, "**Collateral Diminution**" shall mean an amount equal to any diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date resulting from the following: (a) the use by the Debtors of the Prepetition Collateral, including the Cash Collateral (whether in accordance with the terms and conditions of this Interim Order or otherwise); (b) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; (c) the physical deterioration, consumption, use, sale, lease, disposition, or shrinkage of the Prepetition Collateral; (d) the imposition and use of the Carve-Out (to the extent that the Carve-Out is funded following the issuance of a Carve-Out Notice); or (e) any other decline in value.

5.    **Right to Credit Bid**. The RBL Agent, on behalf of itself and the Prepetition Secured Parties, shall have the right, without further application to or approval by the Court, to "credit bid" the full amount of the Prepetition Secured Indebtedness in connection with any sale of all or any portion of the RBL Credit Parties' assets, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code. In connection with the foregoing, the RBL Agent shall have the right to assign its right to "credit bid" all or any portion of the Prepetition Secured Indebtedness to a newly-formed acquisition vehicle.

6.    **Priority of Adequate Protection Liens and Adequate Protection Claims**. Subject to the Carve-Out and Prior Senior Liens, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 3 of

17

this Interim Order shall not be subject or junior to any lien or security interest that is avoided and

preserved for the benefit of the RBL Credit Parties' estates under section 551 of the Bankruptcy

Code and shall not be subordinated to or made *pari passu* with any lien, security interest, or

administrative claim under section 364 of the Bankruptcy Code or otherwise.

       7.    **Carve-Out**.

       (a)    For purposes hereof, the "**Carve-Out**" shall mean (i) any fees payable to the Clerk of the Court and statutory fees payable to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) allowed, accrued, and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of professionals retained by order of the Court (or whose application for retention is then pending, provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event (as defined below) in accordance with the Budget; (iii) up to $3,000,000 of allowed and unpaid fees and expenses, regardless of when such fees and expenses become allowed by order of the Court, of professionals authorized to be retained by the Court, incurred after the occurrence of a Carve-Out Event; and (iv) any and all reasonable fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), not to exceed $25,000. For purposes hereof, a "**Carve-Out Event**" shall occur upon the occurrence and during the continuance of a Termination Event (as defined below) and upon delivery of a written notice thereof by the RBL Agent to the Debtors (a "**Carve-Out Notice**"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses, and disbursements of professionals retained by order of this Court allowed by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code. Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (iii) above with Cash Collateral without reduction of the Carve-Out in clause (iii) above shall terminate, and upon receipt of such notice, the Debtors shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals with Cash Collateral is subject to the Carve-Out. A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court and consistent with the Budget, as the same may be due and payable, without reducing the Carve-Out.

       (b)    Notwithstanding anything in this paragraph or elsewhere in this Interim Order to the contrary, no portion of the Carve-Out or any other Prepetition Collateral or Cash Collateral shall be used for professional fees and expenses incurred for any litigation or threatened litigation against the RBL Agent or any of the other Prepetition Secured Parties or for the purpose of challenging the validity, extent, or priority of any claim, lien, or security interest held or asserted by the RBL Agent or the other Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Secured Indebtedness or the security interests in or liens held by the RBL Agent and the Prepetition Secured Parties on

the Prepetition Collateral or the Adequate Protection Collateral, or any Interest Challenge; *provided*, *however*, that an aggregate of $50,000 from the Carve-Out and the Prepetition Collateral, and any assets (or proceeds thereof) of the Debtors that do not constitute Prepetition Collateral, may be used to pay the Allowed Professional Fees of the Committee to investigate the Prepetition Liens as provided in paragraph 18 hereof. For the avoidance of doubt, expenditures made in connection with such investigation prior to the delivery of a Carve-Out Notice shall not reduce the Carve-Out.

8.     **Inspection Rights**. In addition to, and without limiting, whatever rights to access the RBL Agent and the Prepetition Secured Parties have under the RBL Credit Documents, upon reasonable prior written notice (including via email) and during normal business hours, the RBL Credit Parties shall permit representatives, agents, and employees of the RBL Agent to (a) have reasonable access to and inspect and copy the RBL Credit Parties' books and records, including all records and files of the RBL Credit Parties pertaining to the Prepetition Collateral and Adequate Protection Collateral, (b) have reasonable access to and inspect the RBL Credit Parties' properties and (c) to discuss the RBL Credit Parties' affairs, finances, and condition with the RBL Credit Parties' officers and financial advisors.

9.     **Termination**. Subject to the Waiting Period (as defined below), except in the case of 9(c) below where no Waiting Period shall apply, and paragraphs 7 and 11, the Debtors' right to use Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "**Termination Date**") without further court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (r) below (such events, collectively, the "**Termination Events**").

(a)     Thirty-five days after entry of the Interim Order, if no Final Order has been entered on or before such day;

(b)     The Restructuring Support Agreement has not been entered into by the Required Participating Noteholders (as defined in the Restructuring Support Agreement) and approved by the Court on or before August 15, 2016;

(c)     Fourteen (14) days after termination by either the Noteholders or the Companies (each as defined in the Restructuring Support Agreement) of the Restructuring Support Agreement, unless (i) during such fourteen (14) day period, such termination is waived or rescinded by the terminating party or parties, (ii) holders of at least two-thirds of the aggregate principal amount of the TUSA Notes (as defined in the Restructuring Support Agreement) then outstanding remain parties to the Restructuring Support Agreement or are parties to a restructuring support agreement with the same terms as the Restructuring Support Agreement (such restructuring support agreement, including all exhibits and restructuring or other term sheets related thereto, the "**Alternative RSA**"), (iii) the treatment of the "TUSA RBL" under the Restructuring Term Sheet (or Alternative RSA) and the "Milestones" under the Restructuring Support Agreement (or Alternative RSA) have not been modified in any respect and (iv) no other changes to the Restructuring Support Agreement (or Alternative RSA) material to the rights or interests of the Prepetition Secured Parties are made or proposed, without the written consent of the RBL Agent;

(d)     March 15, 2017 (unless extended with the written consent of the RBL Agent, which extension thereof shall be effective without further application to, or approval by, the Court);

(e)     The entry of this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the RBL Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Adequate Protection Collateral with a value in excess of $1,000,000, without the written consent of the RBL Agent, which consent may be withheld in its sole discretion;

(f)     The Case of any of the RBL Credit Parties is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in the Case of any of the RBL Credit Parties, or the RBL Credit Parties seek entry of an order accomplishing any of the foregoing;

(g)     The failure by the Debtors to observe or perform any of the material terms or material provisions contained herein;

(h)     The RBL Credit Parties create, incur, or suffer to exist any postpetition liens or security interests having a value greater than $1,000,000 in the aggregate on the Prepetition Collateral or Adequate Protection Collateral other than: (i) those granted pursuant to this Interim Order; and (ii) Liens arising under operating agreements, unitization and pooling agreements and orders, farmout agreements, gas balancing agreements, and other agreements, in each case that are customary in the oil, gas, and mineral production business and that are entered into by any RBL Credit Party in the ordinary course of business provided that (A) such Liens are taken into account in computing the net revenue interests and working interests of the RBL Credit Parties warranted in the RBL Security Documents or the RBL Credit Agreement, (B) such Liens do not secure borrowed money, (C) such Liens secure amounts that are not yet due or are being contested in good faith by appropriate proceedings, if such reserve as may be required by GAAP shall have been made therefor, and (D) such Liens are limited to the assets that are the subject of such agreements;

(i)        (i) Except as otherwise provided in this Interim Order and the Final Order, an order is entered granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens or Adequate Protection Claims granted to the RBL Agent and the Prepetition Secured Parties under this Interim Order; (ii) an order of the Court is entered reversing, staying for a period in excess of five business days, vacating, or otherwise amending, supplementing, or modifying this Interim Order in a manner adverse to the Prepetition Secured Parties, in each case without the written consent of the RBL Agent; or (iii) the Debtors file a motion seeking to reverse, stay, vacate, or otherwise amend, supplement, or modify this Interim Order, in each case without the written consent of the RBL Agent;

(j)        (i) Any proceeding is commenced by any Debtor, or, except as set forth in paragraph 18, any person claiming by or through the Debtors, seeking, or otherwise consenting to, (A) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Claims or (B) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or Adequate Protection Collateral, including the Cash Collateral, or (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties;

(k)        Subject to paragraph 3(b), the failure by the Debtors to adhere to the Budget except with respect to Permitted Deviations or other Non-Conforming Uses permitted by the RBL Agent, in its sole discretion;

(l)        The failure by the RBL Credit Parties to make any payment required pursuant to this Interim Order when due;

(m)        The effective date of any confirmed chapter 11 plan for the RBL Credit Parties;

(n)        The entry of a subsequent order of the Court terminating the RBL Credit Parties' use of Cash Collateral;

(o)        The filing by any RBL Credit Party of any (i) restructuring or plan support agreement, including without limitation the Restructuring Support Agreement or Alternative RSA, (ii) chapter 11 plan of reorganization or liquidation or (iii) other agreement that provides for a restructuring of funded indebtedness, which, in each case, does not contain a provision for termination of the commitments under the RBL Credit Agreement and the indefeasible payment in full in cash of all obligations under the RBL Credit Documents on or before the effective date of such plan;

(p)        Any proceeding is commenced by the RBL Credit Parties seeking a sale of substantially all or a material portion of the RBL Credit Parties' assets (i) without the prior written consent of the RBL Agent or (ii) without expressly providing for the Prepetition Secured Parties' right to credit bid up to the full amount of the Prepetition Secured Indebtedness;

(q)        The ending weekly cash balance reported by the RBL Credit Parties pursuant to paragraph 3(f)(v) is less than (i) $40,000,000 for any week during first 13-week period following the Petition date; (ii) $25,000,000 for any week during the immediately

21

following 13-week period; or (iii) $15,000,000 for any week during the 13-week period following thereafter; *provided, however*, that the weekly cash balance in (q)(ii) and (iii) hereunder shall be increased to $28,000,000 and $18,000,000 respectively in the event the Court determines that the Default Rate is calculated at a lower rate of interest than provided in Paragraph 3(c) hereunder; and

   (r) Absent the prior written consent of the RBL Agent, any change or alteration that is adverse in any material respect to the Prepetition Secured Parties to (i) the RBL Credit Parties' cash management system, as such system existed on the Petition Date (other than changes in the ordinary course of business consistent with past practice) or (ii) any order entered by the Bankruptcy Court granting the Cash Management Motion.

   10. **Remedies After a Termination Date**. Subject to the provisions of paragraphs 7, 9 and 11, the Debtors' authority to use Cash Collateral shall automatically terminate upon five business days' prior written notice (the "**Waiting Period**") to the Debtors (with a copy to counsel to the Debtors, counsel to the Committee, counsel to the Ad Hoc Noteholder Group, and the United States Trustee) given upon the occurrence or during the continuance of a Termination Event, unless such Termination Event is waived in writing by the RBL Agent in its sole discretion, all without further order or relief from the Court. The automatic stay under Bankruptcy Code section 362 is hereby vacated and modified to the extent necessary to permit the RBL Agent and the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and Adequate Protection Collateral, including the Cash Collateral, provided for in this Interim Order, the RBL Credit Documents, and applicable law, unless the Court has determined that a Termination Event has not occurred or is not continuing. During the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred or is continuing. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or

other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief.

11.    **Application of Collateral Proceeds**. Following the occurrence of a Termination Event, the Debtors are hereby authorized to fund an account from which to satisfy the Carve-Out from 100% of all collections on, and proceeds of, the Prepetition Collateral and Adequate Protection Collateral. Subject to entry of an order of this Court to the contrary, the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Secured Parties to retain and apply all collections, remittances, and proceeds of the Prepetition Collateral and the Adequate Protection Collateral to the Prepetition Secured Indebtedness in accordance with the provisions of the RBL Credit Documents (subject to the Carve-Out, as described above).

12.    **Limitation on Charging Expenses Against Prepetition Collateral**. Subject to entry of the Final Order, all rights to surcharge the interests of the RBL Agent and the Prepetition Secured Parties in any Prepetition Collateral or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases. No action, inaction, or acquiescence by the RBL Agent or the Prepetition Secured Parties, including permitting the use of Cash Collateral to fund the RBL Credit Parties' ongoing operations, shall be construed as consent to a charge against the Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code sections 105(a) or 506(c).

13. **No Marshaling**. The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

14. **Reservation of Rights of the Prepetition Lenders**. This Interim Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or take any other action in the Cases, and to appear and be heard in any matter raised in the Cases, and (b) any and all rights, remedies, claims, and causes of action which the Prepetition Secured Parties may have against any Debtor or non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases of the RBL Credit Parties, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date; *provided, however*, that nothing in this sentence shall be deemed to affect the time periods set forth in section 362(e)(1) of the Bankruptcy Code in the event that the Prepetition Secured Parties seek to lift the automatic stay prior to the Termination Date.

15. **Survival of Interim Order**. The provisions of this Interim Order, including all findings herein, shall be binding upon and inure to the benefit of all parties in interest in the Cases, including the Prepetition Secured Parties, the Debtors, any Committee appointed in the Cases, and their respective successors and assigns including, without limitation, any trustee appointed during the Cases or upon a conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases

under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order, shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases, or confirmation or consummation of any plan(s) of reorganization. Subject to the reservation of rights set forth in paragraph 3(c) of this Interim Order and the limitations described in paragraph 18 of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense, or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

16.     **Reversal, Stay, Modification, or Vacatur**. In the event the provisions of this Interim Order are reversed, stayed, modified, or vacated by court order following notice and any further hearing, such reversals, modifications, stays, or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Interim Order. Notwithstanding any such reversal, stay, modification, or vacatur by court order, any indebtedness, obligation, or liability incurred by the Debtors pursuant to this Interim Order arising prior to the RBL Agent's receipt of notice of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the RBL Agent and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges, and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation, or liability, and the validity of any payments made or obligations owed or lien or

25

security interest granted pursuant to this Interim Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

17.    **No Liability to Third Parties**. With respect to any approval or disapproval of expenditures set forth in the Budget including, without limitation, any Permitted Deviation or other Non-Conforming Use, the RBL Agent and the other Prepetition Secured Parties shall not: (a) be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

18.    **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. The Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Interim Order: (a) shall be binding upon the Debtors for all purposes; and (b) shall be binding upon all other parties in interest, including the Committee, for all purposes unless (i) a party has properly filed an adversary proceeding or contested matter challenging the amount, validity, enforceability, priority, or extent of the Prepetition Secured Indebtedness or the Prepetition Liens, or otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates (a "**Challenge**"), by: (A) if a Committee has been appointed on or before the 30th calendar day following the Petition Date, the earlier of (1) the 60th calendar day after the date of appointment of such Committee by the United States Trustee or (2) 10 calendar days prior to the original date scheduled for a hearing to consider confirmation of a chapter 11 plan in the Cases or (B) in the event no Committee is appointed on or before the

30th calendar day following the Petition Date, on or before the earlier of (1) the 75th calendar day after the date of entry of this Interim Order or (2) 10 calendar days prior to the original date scheduled for a hearing to consider confirmation of a chapter 11 plan in the Cases (the "**Challenge Deadline**"); and (b) the plaintiff authorized to bring a Challenge obtains relief in any such timely and properly filed Challenge. If no such Challenge is properly filed or the plaintiff's claims are dismissed or denied by court order, then: (w) the Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Interim Order shall be binding on all parties in interest, including the Committee; (x) the obligations of the RBL Credit Parties under the RBL Credit Documents shall constitute allowed claims for all purposes in the Cases of the RBL Credit Parties and any subsequent chapter 7 case(s) without the necessity of the RBL Agent or the Prepetition Secured Parties filing any proofs of claim in the Cases of the RBL Credit Parties; (y) subject to Prior Senior Liens, the Prepetition Secured Parties' security interests in and Prepetition Liens upon the Prepetition Collateral and the Adequate Protection Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, or otherwise avoidable; and (z) the Prepetition Secured Indebtedness and the Prepetition Liens on the Prepetition Collateral and Adequate Protection Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such Challenge is properly filed as of the dates set forth herein, the Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were

expressly challenged in such Challenge. Nothing contained in this Interim Order shall be deemed to grant standing to the Committee or any other party to commence any such Challenge.

19.     **Enforceability; Waiver of Any Applicable Stay**. This Interim Order shall constitute findings of fact and conclusions of law, and notwithstanding any provisions of the Bankruptcy Rules to the contrary, including, but not limited to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of the execution or effectiveness of this Interim Order.

20.     **Proofs of Claim**. Neither the RBL Agent nor any other Prepetition Secured Parties will be required to file proofs of claim in any of the Cases of the RBL Credit Parties or successor cases with respect to the Prepetition Secured Indebtedness or the Adequate Protection Claims, and the Debtors' stipulations in paragraph C herein shall be deemed to constitute a timely filed proof of claim against each RBL Credit Party. Notwithstanding the foregoing, the RBL Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable RBL Credit Documents; *provided*, *however*, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

21.     **Section 552(b) of the Bankruptcy Code**. The RBL Agent and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the RBL Agent and the

Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral. For the avoidance of doubt, and consistent with the terms of this Interim Order, any cash returned or surcharged pursuant to section 506(c) or 552(b) of the Bankruptcy Code shall be subject to the claims, if any, of the Prepetition Secured Parties under section 507(b) of the Bankruptcy Code.

22.    **Payments Free and Clear**. Any and all payments or proceeds remitted to the RBL Agent and the Prepetition Secured Parties pursuant to the RBL Credit Documents or pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability.

23.    **Headings**. The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

24.    **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Interim Order.

25.    **Final Hearing**. The Final hearing on the Motion is scheduled for [DATE] before this Court.

26.    **Objections**. The Debtors shall promptly serve a notice of the Final Hearing, together with copies of this Interim Order and the Motion (which shall constitute adequate notice of the Final Hearing), on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee that is appointed in the Cases, or counsel thereto, if the same have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall submit any such

objection in writing and file the same with the Court and serve such objection on the following parties so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the day seven days prior to the Final Hearing: (a) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, IL 60606, Attn: Ron E. Meisler and Christopher M. Dressel; (b) the United States Trustee; (c) counsel to the Committee, if any; (d) counsel to the RBL Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, TX 77002, Attn: William A. (Trey) Wood III, and 1251 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Feldsher; (e) counsel to the TUSA Unsecured Notes Trustee; (f) counsel to the Ad Hoc Noteholder Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Matthew J. Williams; (g) counsel to Caliber, Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, Texas, Attn: Alfredo R. Pérez, (h) the parties included on the Debtors' consolidated list of the 20 largest unsecured creditors, and (i) all parties entitled to notice pursuant to Bankruptcy Local Rule 9013-1(m).

Dated: _____, 2016
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Budget**

**Triangle USA Petroleum Corp. (TUSA)**
13-Week Cash Flow Forecast

($ in 000s)

| | 1-Jul-16 1 Fcst | 8-Jul-16 2 Fcst | 15-Jul-16 3 Fcst | 22-Jul-16 4 Fcst | 29-Jul-16 5 Fcst | 5-Aug-16 6 Fcst | 12-Aug-16 7 Fcst | 19-Aug-16 8 Fcst | 26-Aug-16 9 Fcst | 2-Sep-16 10 Fcst | 9-Sep-16 11 Fcst | 16-Sep-16 12 Fcst | 23-Sep-16 13 Fcst | Total 13-Week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts:** | | | | | | | | | | | | | | |
| Crude | - | - | - | 15,336 | - | - | - | - | 15,039 | - | - | - | 16,658 | 47,033 |
| Natural Gas | 167 | - | - | - | - | 385 | - | - | 447 | - | - | - | - | 999 |
| Non-Operated | - | 173 | - | 207 | - | 587 | - | - | 17 | - | 560 | - | 19 | 1,563 |
| Hedge Receipts | 3,740 | 1,296 | - | - | - | - | - | - | - | - | - | - | - | 5,037 |
| Other Receipts | 470 | 166 | 166 | 166 | 166 | 170 | 172 | 172 | 172 | 168 | 158 | 158 | 158 | 2,464 |
| **Total Operational Receipts** | 4,377 | 1,635 | 166 | 15,709 | 550 | 757 | 172 | 172 | 15,675 | 168 | 719 | 158 | 16,835 | 57,095 |
| **Operating Disbursements:** | | | | | | | | | | | | | | |
| Royalty Payments | - | - | (2,254) | - | - | - | (2,513) | - | - | - | - | (3,994) | - | (8,760) |
| Working Interest Payments | 0 | - | (1,745) | - | - | - | (1,924) | - | - | - | - | (2,506) | - | (6,174) |
| LOE/Field Expenses | (453) | (1,250) | (1,400) | (1,250) | (2,090) | (2,088) | (2,087) | (2,087) | (2,087) | (855) | (900) | (900) | (900) | (18,346) |
| GTP & Marketing | - | - | - | (436) | (1,469) | (568) | - | - | (1,908) | (539) | - | - | (456) | (5,376) |
| Taxes | - | - | (44) | - | (1,499) | - | - | (36) | (1,466) | - | - | (23) | - | (3,068) |
| Payroll/Benefits | - | (338) | - | (273) | (65) | (273) | - | (273) | - | - | (368) | (273) | - | (1,865) |
| JIB Payments | - | - | (2,857) | - | - | - | (676) | - | - | - | - | (676) | - | (4,209) |
| Non-Payroll G&A | (64) | - | - | - | (74) | (33) | (64) | (39) | (371) | (36) | (30) | (55) | (30) | (796) |
| Other Disbursements | 8 | - | - | - | - | - | - | - | - | - | - | - | - | 8 |
| **Total Operational Disbursements** | (509) | (1,588) | (8,299) | (1,960) | (5,197) | (2,962) | (7,263) | (2,435) | (5,832) | (1,799) | (930) | (8,426) | (1,386) | (48,586) |
| **Non-Operating Cash Flows:** | | | | | | | | | | | | | | |
| Capex | (475) | (2,070) | (1,253) | (1,601) | (1,750) | (1,669) | (1,637) | (1,707) | (1,637) | (1,726) | (1,948) | (1,948) | (1,948) | (21,371) |
| Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest & Financing Fees | - | (331) | - | - | - | (1,834) | - | - | - | (1,828) | - | - | - | (3,993) |
| Restructuring Professional Fees | (3,115) | - | - | - | (1,440) | - | (95) | - | (1,540) | - | - | (1,834) | - | (8,024) |
| Other Non-Operating | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Cash Flows** | (3,590) | (2,401) | (1,253) | (1,601) | (3,190) | (3,504) | (1,732) | (1,707) | (3,177) | (3,554) | (1,948) | (3,782) | (1,948) | (33,387) |
| **Total Disbursements** | (4,099) | (3,989) | (9,552) | (3,561) | (8,387) | (6,465) | (8,995) | (4,142) | (9,009) | (5,353) | (2,878) | (12,209) | (3,335) | (81,974) |
| **Net Cash Flow** | 278 | (2,354) | (9,386) | 12,148 | (7,837) | (5,708) | (8,823) | (3,970) | 6,666 | (5,184) | (2,160) | (12,050) | 13,501 | (24,879) |
| **Beginning Cash Balance** | 91,024 | 91,302 | 88,948 | 74,525 | 86,674 | 78,837 | 73,129 | 64,306 | 60,336 | 67,002 | 61,818 | 59,658 | 47,608 | 91,024 |
| Net Cash Flow | 278 | (2,354) | (9,386) | 12,148 | (7,837) | (5,708) | (8,823) | (3,970) | 6,666 | (5,184) | (2,160) | (12,050) | 13,501 | (24,879) |
| Drawdown/Paydown (+/-) | - | - | (5,037) | - | - | - | - | - | - | - | - | - | - | (5,037) |
| **Ending Cash Balance** | 91,302 | 88,948 | 74,525 | 86,674 | 78,837 | 73,129 | 64,306 | 60,336 | 67,002 | 61,818 | 59,658 | 47,608 | 61,109 | 61,109 |